Our next case is No. 242298, Intuit Inc. v. Samesurf, Inc. Thank you, Your Honor. Michael Saxtetter for Appellant, Intuit, in this appeal. May it please the Court, the Board made a number of errors in its decision regarding the 448 patent. You have to win on all of them, right? I have to run the table, Your Honor. The first one relates to Limitation 1C, which is sending an invitation from the host device. All the actions are performed by the host device here, except in the where-in clause, as we'll discuss in a little bit, from the host device to the invitee device, which is called in the 448 patent, where the invitation includes a session identifier. And LeBrun discloses that in sending that first to the first web client, sends the invitation to the group surfing server, and then that server sends the invitation on to Well, what's the invitation in LeBrun? That's the question. It's a message that initiates the session and identifies Which message are you actually referring to in LeBrun? Because it looked like you were referring to the session creation message 151. That's correct, Your Honor. And there's no evidence that the session creation message 151 gets forwarded from the synchronization server to the guest devices? There is evidence that the guest devices receive an invitation to join the same session. Right. But if the theory is that the session creation message 151 gets sent from the host to the forwarded from the synchronization server to the guest devices, I think that was the problem that the board found that LeBrun doesn't speak to that message literally getting forwarded to the guest devices. That's my understanding of the board's rationale. There's no disclosure in LeBrun that says that that particular message is the one that is relayed? Right. And the concern there is that if that was your theory, and the petition reply seems to make clear that that was the theory, then why does the board's finding lack substantial evidence? There really isn't any meaningful evidence showing that session creation message 151 gets forwarded to the guest device. There is evidence from Dr. Lieberman that a person of ordinary skill in the art would understand that that is a way that it would be done. And that is the support for the theory in this case. Even if that's true, how would we say there's a lack of substantial evidence for the board's conclusion to the contrary looking at this record? The board is contradicting the only expert testimony that it has on the issue and is failing to credit that and is making an assumption that that is not what is sent. Could we look at 1G? Yes, Your Honor. Because that's the one I have the most trouble with. The claim language here is very convoluted and difficult to follow, but as I understand 1G, it's talking about three steps that are performed in order. One is the host request to the website and then transmitting information to the synchronization server and receiving information from the website. Do you agree that's what 1G says? Well, it's 1G in combination with 1E and I think 1F. Okay, but that's the order, right? That's correct, Your Honor. So how does LeBron disclose that order? Well, I think that it relates to the next page message where the, so there's the page we're on and then there's the next page. The next page message goes to the website server from the first web client, what would be the host device. And it is sent to the joint surfing server and then that goes on to the second web client, the guest device or the invitee device in this case. So there's a request that is made and then that gets sent immediately because it's the next page and then later on when we're on the next page, then that gets to the invitee device to the second web client. I guess the concern I have is at least for your purely next page embodiment, because I know there was a little bit of mixing and matching as a possible alternate theory, even assuming that there was a pure next page embodiment contained somewhere in your petition. I didn't quite see the explanation of how you first send that next page request to a website server and then subsequent to sending that request to this website server, the host device then transmits information related to a web browsing interaction to a synchronized server. So the request is sent first to the website server. And I didn't even see where that was explained in the petition for the next page. Then, for instance, if we can go back to the partial page example for a second, the website, the first web client is not even going to have that partial page, which includes requests for images and so forth, until it has received them. So it has to transmit the request to the joint surfing server, and then it has to go to the guest device, the invitee device.  Okay. So 1F, there are a couple of issues with 1, is whether it's a limitation for the claim at all. Our contention is that it is not, and that it is the claim. Claim 1 requires a series of actions that are specified in the preamble as being performed by the host device. And the where in clauses, 1F1 through 1F3, are not performed by the host device. They're performed either by the synchronization server or by the invitee device. It wouldn't be the first time we saw a claim drafter do funny things with a claim. That's true, Your Honor. And here, the claim drafter chose to amend this claim, claimed method performed by a host device, to now call for other kinds of devices to undertake particular actions. And the claim drafter added those limitations to overcome a prior art rejection, and made it quite clear to the examiner, the prior art doesn't do all this new stuff that I'm adding to limitation 1F. So under those circumstances, should we still ignore those limitations and conclude they don't have patentable weight when they were relied upon to overcome a prior art rejection? I'm not sure the extent to which they were relied upon to overcome a prior art rejection. Let's assume the remarks are crystal clear. This is where the patent owner was laying down, it's planting its flag. I'm overcoming your prior art rejection because I'm adding limitations to this claim that the prior art does not disclose. Now this claim, as amended, is patentable over your prior art. Making that assumption, I don't disagree. Let's assume all that. Making that assumption, I don't disagree with you. Okay. Okay. I don't know if we've hit all. Just the performance of 1F1 through 1F3. Again, I think the primary place to look for that is the partial page embodiment where the question is where the invitee device is getting information about the webpage from the website server and in that embodiment they go out and do exactly that. Does the invitee device make a request? They do when there are links or pointers in the data that is provided to the invitee device to go out to another, to the website server and get pieces of the website. And if the court has no other questions? Okay. Thank you, Your Honor. Mr. McBeth. Thank you, Your Honor. May it please the court. Ryan McBeth on behalf of APA-LEE. Same, sir. Your Honors, I'd first like to rebut a point that counsel raised. In talking about the partial webpage embodiment, that was actually not brought by Intuit in this appeal. And I would note in the IPR final written decision, footnote 16, PNIC's page 47, the board noted that arguments regarding that partial webpage embodiment were not raised in the IPR and they are not part of this appeal. Your Honor, the court correctly brought up the point. Intuit must overcome six individual claim elements, must traverse on 1C, 1E, 1FI to 1F3 and 1G. Intuit bore the burden of proving by a preponderance of evidence that every claim limitation of the 448 patent claim is disclosed or suggested by LeBron or LeBron in combination with Wayne. But let's cut to the chase. Yes, Your Honor. For example, tell me why 1G with the three ordered steps that I described earlier isn't disclosed by LeBron. Yes, Your Honor. And I would counter Intuit's argument that they raised in their reply brief at page 23. In that, they talked about the next page message specifically in LeBron. And the board in its final written decision correctly concluded that the next page message doesn't actually go to either the invitee device to be performed or to the host device. The next page message goes to the group surfing server of LeBron, which they've analogized to the synchronization server. In LeBron, the architecture is that the group surfing server goes and retrieves the webpages, the web content, and then distributes those webpages, that web content, to each of the web clients. And so the timing cannot be met. If the next page message is mapped to both 1E and 1G, well, it is the group surfing server that's actually retrieving that web content and then spreading it out to the web clients. So 1G wouldn't be met by LeBron under that understanding, which the board explained on appendix page 16 of their final written decision. And then on appendix page 41 of their final written decision, they explained that the next page message is not forwarded or relayed to the web clients. So, Your Honor, in addition to 1G, Intuit also would have to show that the board should be reversed on 1C and also the where-in clauses 1Fi to 1F3. With regard to 1C, Intuit has not met by a preponderance of the evidence. They have not demonstrated to the board or in their appeal that by a preponderance of the evidence that they could show LeBron met claim limitation 1C. What they pointed to in LeBron was two different communication messages. Intuit pointed to, first, the session creation message and, second, a message sent by the group surfing server to its participants informing the participants in the group surfing session of the session. Your Honors, those messages the board found in their final written decision on a preponderance of the evidence could not meet the invitation limitations of 448, Claim 1. The reason that they found that is that LeBron itself is absent of a description of an invitation framework. LeBron has these messages that it explains. It doesn't use the word invite invitation, but aside from that, it doesn't actually describe an invitation framework. And I'd like to give an example here. So my wife is an elementary school teacher. Her classroom is assigned laptops or Chromebooks. Those students could... Did the board determine that LeBron didn't describe an invitation framework? Your Honor, they didn't say that in their opinion, but they did state that by a preponderance of the evidence, this is at appendix page 30, by a preponderance of the evidence, the board considered both the direct sending argument raised by Intuit and the indirect sending argument, and they said that those two messages did not meet their understanding of what Claim 0... But that's different. I mean, it seems on the face of it that LeBron does describe invitation framework. Your Honor, I'd go back to my hypothetical here. You know, students in a classroom, they open laptops, they run a program. They're all automatically, programmatically joined into a session of whatever computer program they're running. An invitation is not required to get participants into a session. Sure, it's one way they could get into a session, but it's not a requirement. Somehow, these invitee devices in LeBron are getting the needed information in order to go get the web page from the website server, right? Your Honor, the architecture of LeBron is that the group surfing server in the primary embodiment goes out and retrieves the web pages, the web content itself, and then distributes the web pages, the web content to the group. To the web clients. This makes the group surfing server a bottleneck. It's retrieving the web content, it's passing it out to the web clients. This is different from the architecture that's laid out in 448 Claim 1 where the users, the host device, the guest devices are retrieving that web content. Counsel on the other side says that only his expert addressed this point as to whether LeBron's message, for example, 151, is an invitation and gets to the invitees. Is it true that there's no other evidence in the record on this point? Your Honor, I guess two separate questions there. Did our expert also opine on this issue? I believe he did. I do not believe that's in the record on appeal, Your Honor. Okay, so if I have to treat the record, and maybe you're saying I don't, but if I have to treat the record as completely one-sided in his favor, how do I affirm the Board's finding? Your Honor, I would look at the Board's final written decision, and I would consider the evidence that they looked at, which was looking at the disclosures of LeBron, considering what was presented for them from each side, and giving deference to their decision. They looked at substantial evidence, and they ended up deciding what I would concur is what a reasonable party would decide in looking at that evidence. Your Honor, Intuit also failed to raise or failed to show what was in the wearing clauses, 1FI, 1FI2, and 1FI3. And, you know, the question before the Court is, well, are those wearing clauses material to patentability? And I would say, yes, Your Honors, they are. If we look at appendix pages... Excuse me here. If we look at the patent prosecution history, and specifically the examiner's stated reasons for allowance, very specifically the examiner made an amendment to Claim Element 1FI, and very specifically the examiner stated in his reasons for allowance that that, paraphrasing that claim amendment, that that claim amendment was part of the stated reasons for allowance. And I would submit to this Court not only did the examiner state that in the prosecution history, but also those are procedural steps that are necessary for a synchronized browsing session to occur. Those are procedural steps. They're part of what it takes. Both the host device and both the invitee device need to go retrieve that web content for them to be synchronized, for them to be looking at the same web page at the same time as part of the synchronized browsing session. Your Honor, I would submit to this Court that Intuit has not met its burden. They have not shown by a preponderance of the evidence that each of Claim Elements 1C, 1E, 1FI to 1F3 and 1G can be met by LeBron or LeBron in combination with Wang. I believe the Board got it correct in its final written decision on each of these claim elements. They looked at all of the same evidence, all of the same disclosures in LeBron that are now before this Court on appeal. In each of these instances, they made determinations on these claim elements that they were not shown or rendered obvious by LeBron. And I believe that they came to conclusions that a reasonable mind would come to when considering this evidence. If there are no other questions, Your Honor, I'll stop. Okay, thank you. Thank you. Just a second. Thank you, Your Honor. To address 1G, it requires that the host device in 1E and 1F preamble make a request to the website server. The request after that, the host device transmits the information that's needed for the invitee device via the synchronization server and after making that transmission then receives the webpage from the website server. That is described in the next page embodiment at 1616 where the group surfing server directs the target website to deliver the next page to the group surfing server itself or in an alternative embodiment the web client, the first web client can request that page directly from the web client. It then sends the information to... The board said these steps occurred but they didn't occur in the order that's specified, right? I think it has to occur in the order it's specified. The request is sent and it's sent... Well, you could have the request to the website server and then the return from the website server to the host and then the sending of the material to the web browsing interaction server, whatever it is, synchronization server. So when the website... Fair point, Your Honor. It may be that that's the case. I don't think it has to be the case and I think that LeBrun effectively discloses everything, discloses both ways of doing it. Thank you, Your Honors. Thank you. Thank you both counsel. The case is submitted.